UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re:
SPLIT SECOND TOWING                     Bankruptcy Case. No. 8:08-bk-11066-MGW
TRANSPORT INC.,
       Debtor,


JM CONVENIENCE CORP.,
       Appellant


       versus                                CASE N0. 8:09-cv-2479-24


SPLIT SECOND TOWING &
TRANSPORT, INC.,
       Appellee


—————————————————

Appeal from the United States Bankruptcy Court
for the Middle District of Florida

—————————————————


This cause comes before the Court on creditor JM Convenience Corp.'s consolidated appeal of the U.S. Bankruptcy Court's orders confirming the Chapter 11 reorganization plan of Debtor Split Second Towing & Transport, Inc. ("Split Second Towing") and extending the time for Split Second Towing to file ballots accepting its reorganization plan. (Bank. Docs. 264, 279.)

The parties requested oral argument, but the Court finds that oral argument would not

1

substantially aid the decision-making process.  Fed. R. Bank. P. 8012.  The Court can rule on the briefs (Docs. 22, 30) and an independent review of the record.

## BACKGROUND

On July 25, 2008, Split Second Towing, a small business based in Seffner, Florida, filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The first reorganization plan created nine classes of claims and interests.  (Bank. Doc. 144.)  Class VIII consisted of general unsecured claims, which included JM Convenience Corp.'s claim for $62,549.86.  Under the original reorganization plan, creditors in Class VIII would be paid 10 percent of their claim in 60 monthly installments.  The money would come from the continued operation of the business.

On April 30, 2009, Split Second Towing filed its first ballot tabulation from creditors who had the right to vote on the plan under 11 U.S.C. § 1126.  Section 1126 requires that each class of creditors must accept the reorganization plan for the Bankruptcy Court to confirm it.  A class accepts a reorganization plan if both one-half of the number of creditors in the class and creditors holding two-thirds of the dollar amount of the claims in the class vote to accept.  11 U.S.C. § 1126(c).  Because Class VIII contained only two creditors, JM Convenience Corp.'s single vote could kill the reorganization plan.  On the first ballot, JM Convenience Corp., as well as Sovereign Bank, voted to reject the plan.[1]  (Bank. Doc. 189.)

Negotiations ensued during which Split Second Towing submitted five different amended reorganization plans in order to win confirmation of a plan that would permit it to remain in business.  Both the first amended and second amended reorganization plans made JM

---

[1] Sovereign Bank contained an unsecured claim in Class VIII and also held a secured claim for $659,000 in Class III.  (Bank. Doc. 189.)

Convenience Corp. the sole unsecured creditor in Class VII and gave it better terms.[2]  Rather
than receive 10 percent of its claim in 60 monthly installments as proposed under the original
plan, JM Convenience Corp. would be paid 47 percent of its now-larger $94,162.48 claim in 50
monthly installments.[3]  (Bankr. Docs. 238, 245.)  Under a third amended plan filed on August
25, 2009, JM Convenience Corp. would receive 100 percent of its claim, without interest, in 50
monthly installments.  (Bank. Doc. 248.)  The next day, August 26, 2009, on the morning of the
confirmation hearing, Split Second Towing amended its plan again—awarding JM Convenience
Corp. 100 percent of its claim, with 3.25 annual interest over the life of the plan.  (Bank. Doc.
250.)  But none of the promised payments in any of the five plans were secured by collateral.
The payments would come from Split Second Towing's continued operation.

      At the confirmation hearing on August 26, 2009, JM Convenience Corp. again opposed
the plan.  Because JM Convenience Corp.'s payment was not secured by property and because
Split Second Towing had failed to keep previous promises to pay, JM Convenience Corp. sought
stock in the reorganized company.  (Bank. Doc. 299, Hr'g Tr. at 11-21.)  Split Second Towing,
however, refused to offer JM Convenience Corp. stock.  Id. at 14.  To give the parties time to
negotiate, the Bankruptcy Court continued the hearing until September 2, 2009.

      Shortly before the continued hearing, Split Second Towing filed a second ballot
tabulation.  Sovereign Bank, who had voted against the plan, switched sides and voted in favor
of it.  But JM Convenience Corp. still voted no.  At the September 2 hearing, the Bankruptcy
Court said it would reject Split Second Towing's motion for a "cram down" under 11 U.S.C. §

---

[2] Unsecured creditors were moved from Class VIII to Class VII.

[3] However, payments would begin in the eleventh month of the plan, rather than 30 days after the
confirmation of the original plan.

3

1129(b), which would have permitted the Bankruptcy Court to confirm a plan under certain conditions over JM Convenience Corp.'s opposition.  (Bank. Docs. 283, Hr'g Tr. at 36-38.) Because Split Second Towing remained unwilling to secure its promise to pay JM Convenience Corp., the Bankruptcy Court said it intended to deny confirmation of the Chapter 11 reorganization plan, which would force Split Second Towing to liquidate its business and leave JM Convenience Corp. with nothing.  "So this is a bit of a poker game," the Bankruptcy Court said.  The Bankruptcy Court then gave Split Second Towing  "one last opportunity to see if the Debtor can work something out" and continued the hearing.  Id.  at 37-38.

On September 14, 2009, two days before the continued confirmation hearing, Split Second Towing submitted its Fifth Amended Reorganization Plan and an Amended Disclosure Statement.  (Bank. Docs. 256, 257.)  Under the new plan, Class VII creditors received 20 percent of their claims at 15 percent annual interest in monthly installments over the plan's life, rather than 100 percent of claims at 3.25 percent annual interest.  (Bank. Doc. 256.)  On the morning of the hearing—apparently five minutes before it began—Split Second Towing submitted its Second Amended Ballot.  This time, the ballot showed that Split Second Towing had moved creditors from other classes into Class VII.  It also solicited votes from unsecured creditors who had not voted before.  JM Convenience Corp.'s vote no longer controlled the outcome.  Instead, 15 creditors belonged to Class VII.  And this time, 9 of the 15 class members voted to accept the plan.  (Bank. Doc. 260.)  The nine class members who accepted the plan held $331,677.80 in debt, or approximately 70 percent of the $471,278.49 in unsecured debt.[4]  Split Second Towing

---

[4] Split Second Towing's counsel told the Bankruptcy Court that the total claims in Class VII amounted to $489,972.99.  (Bank. Doc. 284, Hr'g Tr. at 9-11.)  The unsecured ballot tabulation chart also shows this total figure. (Bank. Doc. 260.)  But this figure is not correct.  The amounts listed in the chart total $471,278.49.  This error, however, would not have changed the outcome of the vote.

now had the votes to win confirmation over JM Convenience Corp.'s opposition.

At the confirmation hearing, JM Convenience Corp. objected to the two-day notice and questioned whether Split Second Towing had actually obtained votes from the new creditors in the last day.  (Bank. Doc. 284, Hr'g Tr. at 14-15.)  It also objected that Split Second Towing had gerrymandered the vote by shifting claims into Class VII and failed to re-solicit the Fifth Amended Plan with notice as required by the Code and Rule 2002 of the Federal Rules of Bankruptcy Procedure.  The Bankruptcy Court overruled JM Convenience Corp.'s objection on lack of notice.  The Court said:

> The notice requirements in the rules are that creditors have 25 days notice of an opportunity to object and to the hearing on confirmation.  There's no requirement that a plan, an amended plan, has to be re-solicited or circulated.  Amendments to plans occur all the way up to hearings and with negotiations going on literally through the middle and often to the end of a confirmation hearing. . . .The ballots were literally solicited right up to the last minute, which is the way it typically does work.

Id. at 22-23.  The Court then overruled JM Convenience Corp.'s objections and confirmed the plan.

JM Convenience Corp. timely filed two appeals—one to the Bankruptcy Court's confirmation and one to its order to allow Split Second Towing to file late ballots.  At JM Convenience Corp.'s request, this Court consolidated the cases, and this consolidated  appeal followed.

## ANALYSIS

After a bankruptcy court enters a final order in a case, 28 U.S.C. § 158(a) permits a party to appeal the order to the district court.  In reviewing a bankruptcy order, the district court functions as an appellate court.  In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994).

The Court conducts a de novo review of the bankruptcy court's legal conclusions and must accept the bankruptcy court's factual findings unless they are clearly erroneous.  In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir. 1993).

**I.     Although Two Creditors Improperly Voted in Class VII, the Error Did Not Change the Outcome of the Ballot Tabulation**

JM Convenience Corp. argues that the Bankruptcy Court erred by counting the ballots of four creditors who were not eligible to vote in Class VII.  While JM Convenience Corp.'s argument is partially valid, the improper votes would not have changed the outcome of the ballot tabulation.  Therefore, the Bankruptcy Court's confirmation of the plan stands.

Split Second Towing concedes in its Answer Brief that two Class VII creditors, SunTrust Bank, who held a $14,972.11 claim, and U.S.A. Financial Services, LLC, who held a $3,723.36 claim, should not have been permitted to vote in Class VII.  As for the other two creditors, JM Convenience Corp. argues that Mobile Mini, Inc., who held a $3,263.49 claim, and Tampa Springs Co., who held a $1,734.76 claim, should not have been permitted to vote under 11 U.S.C. § 502 because Split Second Towing had objected to these claims and the "objections were pending and unresolved at the time" of confirmation.  (Doc. 22 at 21.)  This is not correct.  Split Second Towing withdrew its objections to these two claims in open court on May 20, 2009, according to the Bankruptcy Court docket.  Therefore, the objections were not unresolved, and JM Convenience Corp.'s argument fails.

Although the Bankruptcy Court erred in counting the votes of SunTrust Bank and U.S. Financial Services, LLC, this error would not have changed the outcome.  Even if the Bankruptcy Court had excluded these votes, Split Second Towing still secured acceptances from 7 of 13 creditors, satisfying the requirement that it obtain acceptance from a majority of the

number of creditors in the class.  In addition, the creditors who properly accepted the plan still held $312,982.33 in claims, or 69 percent of the total unsecured claims of the class.  These votes satisfied the requirement that creditors holding two-thirds of the total dollar amount of the claims accept the plan.  See Appendix A.  Class VII would still have accepted the plan even if these errors had been corrected.  Therefore, the errors were harmless.  Because Federal Rule of Bankruptcy Procedure 9005 adopts the harmless error standard for bankruptcy proceedings, the Bankruptcy Court's decision to accept the vote should not be disturbed.

## II.      Split Second Towing Satisfied the Notice Requirements of the Bankruptcy Code

JM Convenience Corp. also argues that the Bankruptcy Court failed to give it the notice required under 11 U.S.C. § 1127 and Rule 2002(a).  Section 1127 of the Bankruptcy Code allows a debtor to modify a plan "at any time before confirmation" so long as the plan complies with the content, disclosure and other requirements of 11 U.S.C. §§ 1122, 1123, 1125.  Section 1127(a) is "designed to implement the negotiation process, which is the essence of the formulation of any plan of reorganization."  In re Winn-Dixie Stores, Inc., 377 B.R. 322, 335 (M.D. Fla. 2007) (quoting Collier Bankruptcy Manual, 3d Ed. Revised § 1127.03).  The rule prevents a plan proponent from securing votes of acceptance from creditors and then making a material change in the plan after the votes are in hand.  In re: New Power Company, 438 F.3d 1113, 1117-18 (11th Cir. 2006).[5]  If a plan proponent makes a "material" change in a plan, she must re-solicit the plan and provide new notice.  The rule, in essence, prevents a plan proponent from pulling a bait and switch.

---

[5] See also In re Frontier Airlines, Inc., 93 B.R. 1014, 1023 (D. Colo. 1988) ("If the modification adversely affects the interests of a creditor who has previously accepted the plan, in more than a purely ministerial de minimis manner, that creditor should have the opportunity to reconsider and change his or her vote.").

The interests protected by § 1127 are not implicated in this case.  No bait and switch occurred.  JM Convenience Corp. rejected the plan before it was modified, and then rejected it again after it was modified.  JM Convenience Corp.'s counsel appeared at the confirmation hearing, spoke against the plan, voted against the plan, and made the same objections at the hearing that he now brings on appeal.  The notice and lack of re-solicitation did not deprive JM Convenience Corp. of any substantive rights it would have had if the Bankruptcy Court had continued the confirmation hearing and ordered Split Second Towing to re-solicit all the creditors.  Nor did the Bankruptcy Court carry over any of the creditor's votes.

Even if the Court applied a strict interpretation of § 1127 and required re-solicitation whenever a "material" modification is made in the plan, re-solicitation would not have been necessary in this case.  To trigger re-solicitation, the "severity of the modification need not be such as would motivate a claimant to *change* their vote—only that they would be apt to *reconsider* acceptance."  In re American Solar King Corp., 90 B.R. 808, 824 (W.D. Tex. 1988).  It would be difficult to apply this standard here because the Court did not "deem" any pre-modification votes as "accepted" after modification.  The modification also would not have caused JM Convenience Corp. to "reconsider" its position, both as an objective and subjective matter.  JM Convenience Corp. rejected the plan when the plan offered 100 percent payment of its claim at 3.25 annual interest.  JM Convenience Corp. rejected the plan again when it was modified to pay only 20 percent of its claim at 15 percent annual interest.

It is true that a "literal reading of the current rule would prevent a modified plan from being deemed accepted if it adversely affected the treatment of *any* claim in *any* way. [But] [s]uch an overstrict reading does not comport with the legislative history, nor is it in step with

8

the approach" of courts that have interpreted § 1127.  In re American Solar King Corp., 90 B.R.

at 825.  Nor does such a hyper-technical reading of the statute serve its purpose to allow

creditors to change their votes after a plan has been materially altered.  Moreover, "[t]he

Bankruptcy Code is remedial legislation and ought to be liberally construed."  In re Frontier

Airlines, Inc., 93 B.R. 1014, 1019 (D. Colo. 1988) (internal citations omitted).  For these

reasons, the Court agrees that Split Second Towing complied with the notice and disclosure

requirements of § 1127.

**III.     Split Second Towing Acted in Good Faith in Filing its Fifth Amended Plan**

Finally, JM Convenience Corp. argues that Split Second Towing did not propose the

Fifth Amended Plan in "good faith" because it gerrymandered the votes of the creditors into

Class VII.  Under 11 U.S.C. § 1129(a)(3), a bankruptcy court cannot confirm a plan unless it is

proposed in good faith "and not by any means forbidden by law."  As the Eleventh Circuit said

in McCormick v. Bank One Leasing Corp.:

> While the Bankruptcy Code does not define the term, courts have interpreted 'good
> faith' as requiring that there is a reasonable likelihood that the plan will achieve a
> result consistent with the objectives and purposes of the Code.  Where the plan is
> proposed with the legitimate and honest purpose to reorganize and has a reasonable
> hope of success, the good faith requirements of section 1129(a)(3) are satisfied.  The
> focus of a court's inquiry is the plan itself, and courts must look to the totality of the
> circumstances surrounding the plan keeping in mind the purpose of the Bankruptcy
> Code is to give debtors a reasonable opportunity to make a fresh start.

49 F.3d 1524, 1526 (11th Cir.1995).

As a factual matter, the Bankruptcy Court found that Split Second Towing acted in good

faith.  Therefore, the Court can only reverse the Bankruptcy Court's finding if clearly erroneous.

In re JLJ, Inc., 988 F.2d at 1116.  The Court finds no evidence of clear error and would uphold

the Bankruptcy Court's findings under a de novo review, as well.  The record shows that Split

Second Towing re-arranged the plan in order to save the company and prevent liquidation.  The Bankruptcy Code exists for precisely this purpose.  As the Bankruptcy Court said, "[I]t's what we do; we try to save these small businesses."  (Bank. Doc. 283, Hr'g Tr. At 37.)  Rather than succumb to JM Convenience Corp.'s demand for stock, Split Second Towing convinced the other unsecured creditors to accept less payment rather than force the company into liquidation, which would likely mean that the unsecured creditors would receive nothing.  As the Bankruptcy Court said, "[T]his is a bit of a poker game."  (Bank. Docs. 283, Hr'g Tr. at 36-38.)  On the last hand, JM Convenience Corp. was simply outmaneuvered.

## CONCLUSION

It is Ordered and Adjudged that the orders of the U.S. Bankruptcy Court are **AFFIRMED**.

The Clerk is directed to enter judgment for Split Second Towing & Transport, Inc. and against JM Convenience Corp., transmit a copy of this opinion and order to the Clerk of the Bankruptcy Court, and close the case.

**IT IS SO ORDERED, this 26th day of August, 2010.**

SUSAN C. BUCKLEW
United States District Judge

Copy to:
Clerk of the U.S. Bankruptcy Court for the Middle District of Florida
The Honorable Michael G. Williamson, U.S. Bankruptcy Judge